610 So.2d 782 (1992)
STATE of Louisiana
v.
Willie JONES.
No. 91-KH-1101.
Supreme Court of Louisiana.
December 10, 1992.
*783 Elizabeth W. Cole, New Orleans, Willie Jones, pro se, for applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., Valentin M. Solino, Asst. Dist. Atty., for respondent.
PER CURIAM:
The relator, and co-defendant Earl Jackson, were charged by bill of information with armed robbery in violation of La.R.S. 14:64. The two men were tried together before a jury and found guilty as charged. The district court thereafter granted Jackson's motion for a new trial and the state dismissed the charge against him. The court denied relator's own motion for a new trial and sentenced him as a multiple offender to forty nine and one half (49½) years at hard labor. The Fourth Circuit affirmed relator's conviction and sentence on direct appeal in an unpublished opinion, rejecting his claim that the evidence at trial did not support the jury's verdict. State v. Jones, 553 So.2d 1116 (La.App. 4th Cir. 1989).
Relator then sought post-conviction relief in the district court, again challenging the sufficiency of the evidence. The district court denied him relief and the Fourth Circuit affirmed that ruling in a second unpublished opinion. State v. Jones, 577 So.2d 1233 (La.App. 4th Cir. 1991). We granted certiorari to consider relator's claim that the jury's verdict rests entirely on out-of-court statements of identification so unreliable that no rational trier-of-fact could find them credible. After review of the record, we conclude that relator's claim has merit and reverse accordingly.
At approximately noon on December 6, 1986, two men entered the Broadmoor Pharmacy located at the corner of Broad Street and Washington Avenue in New Orleans. According to the state's theory of the case, the shorter man, Earl Jackson, approached the counter, attended by a Ms. Cecile St. Romaine, and began browsing for cigarettes. His taller companion, the relator, walked briefly to the rear of the pharmacy and then joined Jackson at the counter. When Ms. St. Romaine began to ring up a sale, Jackson produced a pistol and told her to leave the register open. Relator reached across the counter and grabbed the currency in the till. Both men then turned and fled to a car outside with a driver waiting at the wheel.
Ernest Cheneau, a cab driver parked across the street from the pharamacy, looked up from the racing form he was studying in time to see two men, one with a pistol and the other clutching money, run from the pharmacy to the getaway car. Cheneau decided to follow and called his dispatcher to report that that he had observed a green 1977 four-door Oldsmobile, license number 610B989, with three black males riding inside, enter the Calliope Housing Project. At that point, Cheneau broke off the chase.
Shortly thereafter, in response to Cheneau's report, Officer Anthony Ritter drove through Calliope Project and proceeded to Martin Luther King Boulevard, where he *784 spotted a green or blue late model car, license number 95L___, occupied by four black males. Ritter gave chase and pulled the car over at the intersection of South Broad and Erato streets. The three passengers bolted from the vehicle; when Ritter began pursuing them on Erato street, the driver of the car sped away in the opposite direction. Ritter maintained the chase and closed on two of the suspects, one wearing a brown leather jacket, the other a blue windbreaker and a blue cap with white trim. The suspect in the brown leather jacket jumped onto the porch of a house on South Dourgenois Street and sat down, while the other man continued running and escaped. Officer Ritter apprehended the man in the brown leather jacket, Earl Jackson, and returned him to the pharmacy where Detective James Woods had taken over the investigation. Cecile St. Romaine could not make a positive identification but Cheneau identified Jackson as one of the two men he had seen run from the pharmacy.
Approximately three weeks later, on December 30, 1986, Detective King returned to the pharmacy to conduct a photographic lineup with Ms. St. Romaine. The lineup included a picture of relator and St. Romaine thought that he looked similar to one of the robbers, although she could not make a positive identification. On January 22, 1987, Ernest Cheneu viewed the same photographs and identified relator as one of the two men he had seen fleeing from the pharmacy six weeks earlier. Cheneau wrote his name and the date on the back of the photograph.
At trial, Cheneau surprised the state by exculpating Jackson completely and by pointing to relator when asked to identify the person brought back to the Broadmoor Pharmacy on the night of the offense. Cheneau testified with regard to the photographic lineup conducted on January 20, 1987, and confirmed that he had signed and dated one of the photographs. The state was fully aware that Cheneau had identified Jackson not only on the night of the offense but also at a pretrial hearing on a motion to suppress his identification conducted less than a month before trial. Nevertheless, the prosecutor did not ask the witness to reconsider his in-court identification of relator. Nor did the prosecutor ask Cheneau to identify by name the person he had picked out on January 20, 1987. With Cecile St. Romaine again unable to make a positive identification of relator, and with no other evidence connecting either man to the crime or to each other, the state went to the jury on the strength of Cheneau's out-of-court, pre-trial statements.
At the time of trial, Officer King's testimony with regard to both identifications, and Cheneau's testimony regarding his own identification made on January 20, 1987, constituted hearsay evidence. State v. Martin, 356 So.2d 1370 (La.1979); compare La.C.Evid. art. 801(D)(1)(c). Despite any hearsay content, the prior statements of identification made by a testifying witness have generally been considered reliable substantive evidence. State v. Martin, supra, 356 So.2d at 1374, n. 3; C. McCormick, Evidence, § 320, p. 603 (Cleary ed. 1972); Cf. United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). When the state's case rests entirely on evidence regarding out-of-court assertions of fact, however, this Court is not precluded from inquiring into the reliability of the result for due process purposes under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See State v. Lubrano, 563 So.2d 847 (La.1990); State v. Allien, 366 So.2d 1308 (La.1978).
Given the testimony of Officer Ritter and Detective King, no rational trier of fact could have found Cheneau's in-court identification of relator credible, a point the prosecutor did not even argue in closing. The evidence at trial otherwise gives rise to particularized concerns about the reliability of the witness's out-of-court statements. Cheneau discredited himself as a witness by more than simply misidentifying relator as Jackson and exculpating Jackson, although he had been responsible for initiating the prosecution against Jackson in the first place. Solely on that basis, the jury might speculate on whether he had become confused or whether, as the state tried to suggest, and the witness himself flatly denied, *785 Cheneau had been intimidated at a meeting with a Barbara Ann Johnson, the common-law wife of Earl Jackson, and a Victor Thompson, approximately four months after the offense.
Cheneau's confusion, however, traced back to the night of the robbery. Before Ritter returned to the scene with Jackson, Cheneau informed Detective King that the shorter of the two men stood approximately 5'4" or 5'5", weighed 140 pounds, and wore a grey or blue jacket over blue jeans. Ritter had in fact chased a man in a blue windbreaker but lost him before arresting Jackson. Ritter then brought back the 5'9", 175 pound Jackson wearing a brown leather coat, blue jeans, and a blue knit cap. Cheneau identified him on the scene although he had not even mentioned the brown leather coat to King. Cheneau had no basis for comparison at the time but he had informed King that the taller, slimmer man had worn khaki pants and an orange knit cap.
It should have been immediately obvious to the jurors at trial that relator was two inches taller than Jackson and that the state prosecuted Jackson as the shorter robber, although he looked nothing like Cheneau's initial description to the police. At trial, Cheneau continue to insist that the shorter robber had worn the blue windbreaker. He added that the taller man had worn the brown leather jacket, although jurors knew, from Ritter's testimony, that Jackson, the shorter man, had worn the coat. Cecile St. Romaine, who had faced both men across the counter in the pharmacy, also told King that the shorter robber was approximately her own height, 5'4" or 5'5", and that he was wearing a blue windbreaker. She too omitted any mention to King of a brown leather jacket; at trial she agreed with Cheneau that the taller of the two men had worn the coat.
St. Romaine never purported to identify either man, however, and the state corroborated only one aspect of Cheneau's testimony. At 5'11" and 140 pounds, relator appears taller and slimmer than Jackson. The state otherwise failed to bolster Cheneau's testimony on the only other point it could corroborate with independent evidence. Cheneau, who had only a fleeting glimpse of the two men as they ran to the getaway car, reported to his dispatcher that he was following a vehicle with three occupants and a "B" plate number. The police, however, stopped a vehicle with an "L" plate and four occupants, including Jackson, within minutes of Cheneau's radio report. The state made no attempt to prove that the license plate on the car had been switched in the brief interval after Cheneau lost the getaway car in the Calliope Project and before Ritter began chasing his suspect vehicle on Martin Luther King Avenue. Nor did the state establish that the late-model green or blue vehicle chased and stopped by Ritter was in fact the 1977 green Oldsmobile described by Cheneau to his dispatcher.
In State v. Mussall, 523 So.2d 1305, 1310 (La.1988), this Court emphasized that "[t]he principal criterion of a Jackson v. Virginia review is rationality [emphasis in the original]." While Jackson does not allow a reviewing court to substitute its own opinion of what the evidence proved at trial for that of a jury, State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), it also does not permit jurors to speculate when the evidence at trial would leave any rational factfinder with a reasonable doubt of guilt. State v. Lubrano, supra. In this case, the state's evidence gave the jury no rational basis for concluding that Cheneau's out-of-court statements had any more reliability than his in-court testimony. Under these circumstances, a rational trier of fact would necessarily have a reasonable doubt as to relator's guilt.
Accordingly, relator's conviction and sentence are set aside and he is ordered discharged from custody.
CALOGERO, C.J., additionally assigns concurring reasons.
MARCUS, J., dissents.
LEMMON, J., dissents and assigns reasons.
*786 CALOGERO, Chief Justice, assigns additional concurring reasons.
In his trial testimony, the taxi driver misidentified relator as the taller of the two perpetrators in the brown leather jacket brought back to the scene by the police on the night of the crime and informed the jurors that relator's co-defendant Jackson had nothing to do with the offense, although jurors knew from police testimony that the driver had, in fact, identified Jackson on the night of the offense as the taller perpetrator in the brown jacket. This exoneration of Jackson, together with the discrepancy in the identification, destroyed the witness's credibility and removed any rational basis for concluding that the out-of-court identifications had any greater reliability. The state had no independent corroborating evidence linking either man to the crime or to each other and the circumstances under which the taxi driver viewed the fleeing robbers from approximately one block away did nothing to vouch for the accuracy of the identifications by a witness who made no mention of the critical brown leather jacket to the police before he viewed Jackson in the one-on-one confrontation conducted at the scene of the crime.
LEMMON, Justice, dissenting.
The taxi driver identified relator as one of the two robbers he saw leaving the drug store and followed in his cab. The taxi driver was clearly mistaken when he stated that relator was the taller robber in the brown jacket who was brought back to the pharmacy for identification on the day of the crime, rather than the robber whose photograph he later picked out of a lineup, but that mistake merely weakened the primary identification and provided substantial fodder for cross examination and closing argument. Despite the discrepancy emphatically pointed out to them by defense counsel, the jurors based their guilty verdict on the identification. That identification provides sufficient support for affirmation by a reviewing court.