Hood, J.
 

 Defendant appeals as of right from his jury trial convictions of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).
 
 [1]
 
 Defendant was sentenced to consecutive terms of two years for the felony-firearm conviction and twenty-five to fifty years for the murder conviction. While this appeal was pending, the trial court granted defendant’s motion to vacate the convictions. That order was stayed, however, and the prosecutor cross appealed as of right. We reverse the order vacating defendant’s convictions. All the issues discussed are questions of first impression in Michigan.
 

 
 *277
 
 On cross appeal, the prosecutor first argues that the trial court erred in vacating defendant’s convictions on the basis of the 180-day rule, MCL 780.131; MSA 28.969(1). Specifically, the prosecutor argues that the rule does not apply to parolees such as defendant and that the Department of Corrections failed to fulfill its statutory duty to notify the prosecutor of defendant’s status and to request speedy disposition of the charges. Lastly, the prosecutor argues that the statute was not violated because the prosecution made a good-faith effort to try defendant within the time allowed.
 

 The statutory version of the 180-day rule provides:
 

 Whenever the department of corrections receives notice that there is pending in this state an untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility in this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney . . . written notice of the place of imprisonment of the inmate and a request for final disposition ... by certified mail. [MCL 780.131(1); MSA 28.969(1)(1).]
 

 “The request shall be accompanied by a statement setting forth the term of commitment[,] . . . the time already served, the time remaining[,] . . . the amount of good time or disciplinary credits earned, the time of parole eligibility[,] . . . and any decisions of the parole board relating to the prisoner.”
 
 Id.
 
 A defendant is entitled to sentence credit, not necessarily dismissal, for delays caused by lack of notice from the Department of Corrections. See MCR 6.004(D)(2) and Note.
 

 
 *278
 
 The 180-day period begins either (a) when “the prosecutor knows that the person charged with the offense is incarcerated in a state prison or is detained in a local facility awaiting incarceration in a state prison, or” (b) when “the Department of Corrections knows or has reason to know that a criminal charge is pending against a defendant incarcerated in a state prison or detained in a local facility awaiting incarceration in a state prison.” MCR 6.004(D)(1) (emphasis added). “For purposes of [the above] subrule, a person is charged with a criminal offense if a warrant, complaint, or indictment has been issued against the person.” MCR 6.004(D)(1).
 

 Dismissal for a violation of the 180-day rule is appropriate “if the prosecutor fails to make a good faith effort to bring the charge to trial within the 180-day period.” MCR 6.004(D)(2); see also
 
 People v Bell,
 
 209 Mich App 273, 278; 530 NW2d 167 (1995). However, any time during which there is no charge pending is not a “delay” chargeable to either party.
 
 People v Wickham,
 
 200 Mich App 106, 111; 503 NW2d 701 (1993).
 

 In this case, the trial court received no evidence and made no findings of fact concerning the reasons for the delay. Therefore, resolution of the notice and good-faith issues would require that the case be remanded for an evidentiary hearing and fact finding. See MCR 7.216(A)(5). However, given our holding later in this opinion that the 180-day rule does not apply to defendant, we conclude that a remand would be a waste of judicial resources and therefore decline to consider the notice and good-faith issues.
 

 The murder in this case occurred on January 10, 1995, while defendant was on parole and, perhaps, on
 
 *279
 
 escape status.
 
 [2]
 
 Defendant was arrested on the same day, but his parole was not revoked until February 6, 1995. He completed his prior sentence and was released from parole on April 1, 1996, but apparently remained incarcerated while awaiting trial on the murder charge.
 

 It is well settled that the 180-day rule does not apply to an incarcerated parolee unless and until parole is revoked.
 
 People v Von Everett,
 
 156 Mich App 615, 618-619; 402 NW2d 773 (1986) (citing cases). That is because, “until the revocation of parole, a paroled prisoner who is being detained locally, and against whom a parole hold has been filed, is neither, because of the hold, awaiting incarceration in a state prison nor an inmate of a penal institution to whom the 180-day rule applies.”
 
 Von Everett, supra
 
 at 618. In other words, “until revocation of parole, the
 
 *280
 
 accused [parolee] is not being detained in a local facility to await incarceration in a state prison.”
 
 Id.
 
 at 619.
 

 Further, “the purpose of the 180-day rule is to dispose of untried charges against prison inmates so that sentences may run concurrently.”
 
 Bell, supra
 
 at 279; see also
 
 People v McCullum,
 
 201 Mich App 463, 465; 507 NW2d 3 (1993). Thus, the rule is inapplicable to pretrial detainees—-which was apparently defendant’s status following the expiration of his original sentence. See
 
 People v Walker,
 
 142 Mich App 523, 527-528; 370 NW2d 394 (1985). We continue our analysis, however, because the record is less than clear concerning defendant’s correctional status.
 

 Again, the statutory goal of allowing sentences to be served concurrently “does not apply in a case where a mandatory consecutive sentence is required upon conviction.”
 
 McCullum, supra
 
 at 465 (offense committed while in custody); see also
 
 People v Connor,
 
 209 Mich App 419, 425-429; 531 NW2d 734 (1995) (prison escape and habitual offender enhancement). This view has been adopted by a majority of our Supreme Court, albeit in separate opinions. See
 
 People v Smith,
 
 438 Mich 715, 717-718, 719; 475 NW2d 333 (1991) (lead opinion by Levin, J., joined by Griffin and Mallett, JJ.; concurring opinion by Boyle, J., joined by Riley and Griffin, JJ.). We note that consecutive sentencing is mandatory when someone commits a crime while on parole. See MCL 768.7a(2); MSA 28.1030(1)(2).
 

 Here, it is undisputed that the murder occurred while defendant was on parole. Even if his parole had not been revoked or his prior sentence had not expired, concurrent sentences were impossible
 
 *281
 
 because, if found guilty, defendant would receive mandatory consecutive sentences. See MCL 768.7a(2); MSA 28.1030(1)(2). We are thus convinced that the trial court erred as a matter of law in applying the 180-day rule to defendant in this case and therefore reverse its order vacating defendant’s convictions. We now move on to the merits of defendant’s appeal.
 

 On his direct appeal, defendant argues that the trial court erred in admitting the grand jury testimony of two witnesses. Specifically, defendant argues that the testimony was inadmissible hearsay (MRE 802), that the witnesses’ lack of memory at trial was not “inconsistent” with their grand jury testimony (MRE 801), that the witnesses were “unavailable” because of their lack of memory, and that their prior testimony was inadmissible because defendant was not permitted to cross-examine them before the grand jury (MRE 804). Defendant also argues that his constitutional right of confrontation was violated because, since the witnesses remembered nothing, they could not be subjected to meaningful cross-examination about their grand jury testimony. We agree in part and disagree in part.
 

 Clearly, out-of-court statements offered for their truth are usually inadmissible hearsay. See MRE 801(c); MRE 802. However, MRE 801(d)(1)(A) provides that
 

 [a] statement is not hearsay if. .. [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ...
 
 inconsistent
 
 with the declarant’s testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition .... [Emphasis added.]
 

 
 *282
 
 In this case, it is clear from the record that the two witnesses testified before a one-man grand jury under penalty of perjury. The first question is whether their trial testimony—where they claimed to remember nothing about the murder or about their prior statements—was inconsistent with their grand jury testimony, where the witnesses recalled the events in question and implicated defendant.
 

 Federal courts have long held that, for purposes of FRE 801(d)(1)(A), “inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position.” See
 
 United States v Dennis,
 
 625 F2d 782, 795 (CA 8, 1980); see also
 
 United States v Russell,
 
 712 F2d 1256, 1258 (CA 8, 1983);
 
 United States v Distler,
 
 671 F2d 954, 958 (CA 6, 1981). Although federal authority is not binding on this Court, it is persuasive given the identical wording of the Michigan and federal rules. See MRE 801(d)(1)(A); FRE 801(d)(1)(A); see also
 
 People v Barrera,
 
 451 Mich 261, 267; 547 NW2d 280 (1996). Additionally, the federal interpretation of this rule is in harmony with the dictionary definition of the word “inconsistent”: “marked by incompatibility of elements,” “not in agreement with each other,” and “not consistent in standards of behavior.”
 
 [3]
 

 Random House Webster’s College Dictionary
 
 (1997). We therefore conclude that the witnesses’ grand jury testimony implicating defendant was inconsistent with their trial testimony, where they remembered
 
 *283
 
 nothing, and was properly admitted into evidence under MRE 801(d)(1)(A).
 

 Regarding defendant’s right of confrontation, the Supreme Court has held that, when witnesses are present at trial and could be cross-examined about their statements—even though they claim to remember nothing—the witnesses are “available” for cross-examination within the meaning of the Confrontation Clause.
 
 [4]
 

 United States v Owens,
 
 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988); see also
 
 Russell, supra
 
 at 1258; Distler,
 
 supra
 
 at 959. “[T]he Confrontation Clause guarantees only ‘an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.’ ”
 
 Owens, supra
 
 at 559 (quoting
 
 Kentucky v Stincer,
 
 482 US 730, 739; 107 S Ct 2658; 96 L Ed 2d 631 [1987]). “It is sufficient that the defendant has the opportunity to bring out such matters as the witness’ bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination . . .) the very fact that he has a bad memory.”
 
 Owens, supra
 
 at 559 (citation omitted). “The weapons available to impugn the witness’ statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee.”
 
 Owens, supra
 
 at 560. Therefore, although the witnesses claimed to remember nothing at trial, defendant’s right of confrontation was not violated by the admission of their grand jury testimony.
 

 
 *284
 
 On the other hand, we agree that, although the witnesses were “available” for cross-examination for purposes of MRE 801 and the Confrontation Clause, they were technically “unavailable” as defined by MRE 804(a)(3) because they had “a lack of memory of the subject matter of the declarant’s statement.” We also agree that their grand jury testimony would have been inadmissible against defendant under MRE 804(b)(1), former testimony of a witness, because defendant had no “opportunity ... to develop the testimony by direct, cross, or redirect examination” in front of the grand jury. See generally MCL 767.3; MSA 28.943. As argued by defendant, there appears to be a conflict within the rules of evidence.
 

 However, the Unites States Supreme Court has noted and accepted this “verbal curiosity” in the wording of the rules of evidence and has concluded that “the two characterizations are made for two entirely different purposes and there is no requirement or expectation that they should coincide.”
 
 Owens, supra
 
 at 563-564. We agree. To the extent that the trial court admitted the statements under MRE 804, it erred. However, the error was harmless because the statements were properly admitted under MRE 801(d)(1)(A). See
 
 People v Chapman,
 
 425 Mich 245, 254; 387 NW2d 835 (1986) (may affirm if trial court reaches right result for wrong reason).
 

 Lastly, defendant argues that his bindover and conviction were not supported by sufficient evidence because they were based solely on the witnesses’ inconsistent grand jury testimony, which was not subject to confrontation or cross-examination at the time it was given, and which was therefore unreliable. We again disagree.
 

 
 *285
 
 The sufficiency of the evidence is an issue separate and distinct from the question of admissibility. In the context of prior inconsistent statements, the question is whether, viewing the witnesses’ grand jury testimony in the light most favorable to the prosecution, the evidence was so unreliable that no reasonable trier of fact would accept it as sufficient to support defendant’s convictions beyond a reasonable doubt. See
 
 Ticey v Peters,
 
 8 F3d 498, 500-501 (CA 7, 1993). We do not think that to be the case.
 

 The seminal case in this area is
 
 United States v Orrico,
 
 599 F2d 113, 118 (CA 6, 1979), where the United States Court of Appeals for the Sixth Circuit held that, where the prior “statements barely, if at all, meet the minimal requirements of admissibility, we do not believe that a substantial factual basis as to each element of the crime [,] providing support for a conclusion of guilt beyond a reasonable doubt[,] has been offered by the Government.” The
 
 Orrico
 
 court relied on the legislative history of FRE 801(d)(1)(A), where the Senate Committee stated that
 

 some of the opposition to this [r]ule is based on a concern that a person could be convicted solely upon evidence admissible under this [r]ule. The [r]ule, however, is not addressed to the question of the sufficiency of evidence to send a case to the jury, but merely as to its admissibility. Factual circumstances could well arise where, if this were the only evidence, dismissal would be appropriate.
 
 [Orrico, supra
 
 at 118, quoting S Rep No 93-1277, 93rd Cong, 2d Sess, reprinted in 1974 US Code Cong & Admin News 7051, 7063, n 21.1
 

 Partly on the basis of that statement, the court concluded that “[i]t is doubtful, however, that in any but the most unusual case, a prior inconsistent statement
 
 *286
 
 alone will suffice to support a conviction since it is unlikely that a reasonable juror could be convinced beyond a reasonable doubt by such evidence alone.”
 
 Orrico, supra
 
 at 118, quoting 4 Weinstein & Berger, Evidence, ¶ 801, p 74. The court left open the possibility that a prior inconsistent statement “might be sufficient” to establish “a purely technical element of a crime,” such as the value of stolen property or its movement in interstate commerce, “given strong indicia of reliability and an adequate foundation to establish admissibility.”
 
 Orrico, supra
 
 at 118.
 

 Although
 
 Orrico
 
 has received substantial attention, its holding is inconsistent with another case heard by the same court on the same date, but released eight months later. See
 
 United States v Woods,
 
 613 F2d 629, 636-637 (CA 6, 1980). In
 
 Woods,
 
 the codefendant implicated the defendant before the grand jury as part of a plea bargain, but recanted his testimony at trial.
 
 Id.
 
 at 636. The court noted that, “[sjince the firearms and jumpsuit seized during the search of [the defendant’s] residence were never positively identified as the ones used in the robbery, [the codefendant’s] testimony before the grand jury apparently was the only direct evidence linking [the defendant] to the robbery.”
 
 Id.
 
 at 637. Nevertheless, the court concluded that because the testimony was admissible for its truth under FRE 801(d)(1)(A), there was sufficient evidence for the trial court to send the case to the jury.
 
 Woods, supra
 
 at 637.
 

 Orrico
 
 has nevertheless been followed in several jurisdictions that have adopted some version of the federal rules of evidence and now hold that an uncorroborated prior inconsistent statement may not serve as the sole basis of a conviction. See, e.g.,
 
 Brower v
 
 
 *287
 

 State,
 
 728 P2d 645, 648 (Alaska App, 1986);
 
 State v Pierce,
 
 906 SW2d 729, 734-737 (Mo App, 1995);
 
 State v Gommenginger,
 
 242 Mont 265, 277-278; 790 P2d 455 (1990);
 
 State v Ramsey,
 
 782 P2d 480, 483-484 (Utah, 1989) (“not all substantive evidence is of equal probative value”); but see
 
 Henry v State,
 
 861 P2d 582, 586-587 (Alaska App, 1993) (the “independent accusations of sexual abuse” of two sisters was found to sufficiently corroborate their recanted prior inconsistent statements to support the defendant’s conviction). Additionally, a few states still adhere to the common-law rule and hold that prior inconsistent statements are hearsay inadmissible as substantive evidence, and may only be used for impeachment. See, e.g.,
 
 State v Moore,
 
 485 So 2d 1279, 1281-1282 (Fla, 1986);
 
 State v Allien,
 
 366 So 2d 1308, 1310 (La, 1978). Still other states require some degree of corroboration before a prior inconsistent statement will be found to be sufficiently reliable to support a conviction. See, e.g.,
 
 State v Newsome,
 
 238 Conn 588, 616; 682 A2d 972 (1996) (sufficiency depends on the statement’s “reliability, which is tested by examination of the statement itself and by the totality of the other evidence on the record, including the explanation of the witness who purportedly made the statement”);
 
 Commonwealth v Noble,
 
 417 Mass 341, 344-347; 629 NE2d 1328 (1994) (grand jury testimony properly used to corroborate circumstantial evidence of the defendant’s intent);
 
 State v Mancine,
 
 124 NJ 232, 248, 251-252; 590 A2d 1107 (1991) (admissibility depends on a fifteen-factor test of reliability; sufficiency depends on the extent to which other independent evidence corroborates the inconsistent statement);
 
 Fernandez v State,
 
 805 SW2d 451, 453-456 (Tex Crim App, 1991)
 
 *288
 
 (prior inconsistent statement was corroborated by circumstantial evidence, court invaded jury’s province in holding it insufficient to support conviction);
 
 State v Marcy,
 
 165 Vt 89; 680 A2d 76 (1996) (prior inconsistent statement did not raise reliability concerns, was bolstered by some corroborating evidence, and was sufficient to support conviction).
 

 However, with minor variations, most jurisdictions allow an uncorroborated prior inconsistent statement to provide the sole support for a conviction. See, e.g.,
 
 People v Cuevas,
 
 12 Cal 4th 252, 271-272; 48 Cal Rptr 2d 135; 906 P2d 1290 (1995) (sufficiency of out-of-court identification to be measured by substantial evidence test, corroboration no longer required);
 
 Montoya v People,
 
 740 P2d 992, 996-998 (Colo, 1987) (prior inconsistent statement is admissible as substantive evidence if witness is allowed to explain or deny it, and the prior statement purports to relate to a matter within witness’ own knowledge);
 
 Acosta v State,
 
 417 A2d 373, 376-378 (Del, 1980) (uncorroborated prior inconsistent statement may alone support a conviction, but cautionary instruction is required);
 
 Weeks v State,
 
 187 Ga App 307, 308; 370 SE2d 344 (1988) (uncorroborated prior inconsistent statement was, alone, sufficient to support conviction);
 
 State v Tomas,
 
 84 Hawaii 253, 262-265; 933 P2d 90 (1997) (prior inconsistent statement is substantively admissible only if the witness recalled the underlying events and was capable of testifying, sufficiency measured under substantial evidence test);
 
 Nance v State,
 
 331 Md 549, 569-571; 629 A2d 633 (1993) (if sufficiently trustworthy, prior inconsistent statement may support a conviction);
 
 Miller v Commonwealth,
 
 105 Pa Commw 24, 27-29; 522 A2d 720 (1987) (uncorrobo
 
 *289
 
 rated inconsistent identification statement had indicia of reliability, was alone sufficient to support parole revocation). We choose to follow the majority rule.
 

 We note that, in the context of a forgotten out-of-court identification, the United States Supreme Court has disapproved of the practice of requiring indicia of reliability or particularized guarantees of trustworthiness when neither is required by the court rule, FRE 801(d)(1)(C). See
 
 Owens, supra
 
 at 560-561 (witness injured, lost memory). The Court indicated that it did “not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination.”
 
 Id.
 
 at 560. “In that situation . . . the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness’ demeanor satisfy the constitutional requirements” of the Confrontation Clause.
 
 Id.
 
 Bearing that in mind, we nevertheless note that there are sufficient indicia of reliability in this case.
 

 We acknowledge that the two witnesses’ inconsistent grand jury testimony was the only nonhearsay evidence directly implicating defendant in the homicide.
 
 [5]
 
 One of the witnesses was a drug-addicted prostitute; the other was defendant’s sixteen-year-old cousin. The murder occurred in a drug house; defendant was upset because the victim and others had smoked his drugs instead of selling them. Both witnesses testified that defendant argued with the victim and beat him and that he shot a gun at the floor. Defendant’s cousin testified that defendant then shot at the victim as the victim jumped out of a closed
 
 *290
 
 window. The prostitute ran out of the room when defendant started shooting at the floor, but she testified to the grand jury that she then heard another shot and glass breaking. Defendant’s cousin was involved in beating the victim and received immunity in exchange for his grand jury testimony.
 

 There was no independent corroboration of the witnesses’ statements that defendant was the gunman. However, both witnesses gave statements to police on the day after the murder
 
 [6]
 
 that substantially matched the testimony they gave before the grand jury, about five months later. Additionally, a third witness testified during trial that, while he was upstairs, he heard the argument and the shots but did not see who was shooting. The trial was held more than fifteen months after the witnesses testified before the grand jury.
 

 At trial, the witnesses claimed lack of memory and were impeached with their statements to the police. The witnesses’ grand jury testimony was then admitted for its truth. The evidence as a whole, viewed in the light most favorable to the prosecution, was sufficient to support defendant’s bindover and convictions. See
 
 People v Petrella,
 
 424 Mich 221, 268-270; 380 NW2d 11 (1985); see also
 
 People v Johnson (On Rehearing),
 
 208 Mich App 137, 140; 526 NW2d 617 (1994). Determining the weight of the grand jury testimony and resolving credibility disputes was within the exclusive province of the trier of fact.
 
 People v Vaughn,
 
 186 Mich App 376, 380; 465 NW2d 365 (1990).
 

 
 *291
 
 The trial court’s order vacating defendant’s convictions is reversed. Defendant’s convictions and sentences are affirmed.
 

 [1]
 

 Defendant had originally been charged with first-degree, premeditated murder. MCL 750.316; MSA 28.548.
 

 [2]
 

 According to Department of Corrections’ records, defendant “absconde[d] from parole” on October 25, 1994, and was apparently on escape status when the instant crimes were committed. However, because corrections’ records were not made part of the lower court file, we do not rely on them on appeal.
 

 Nevertheless, we note that the 180-day rule does not apply to “[a] criminal offense committed by an inmate of a state correctional facility after the inmate has escaped from the correctional facility and before he or she has been returned to the custody of the department of corrections.” MCL 780.131(2)(b); MSA 28.969(l)(2)(b). Additionally, the purpose of the 180-day rule would not apply in that situation because consecutive sentencing is mandatory for crimes committed while on escape status. See MCL 768.7a(l); MSA 28.1030(1)(1).
 

 A furloughed person who has “failed to return to the place where he was required to be, whether that place was a prison, a halfway house, or a private residence,” can properly be convicted of prison escape.
 
 People v Sarres,
 
 188 Mich App 475, 477; 470 NW2d 86 (1991); see also
 
 People v Sheets,
 
 223 Mich App 651, 653-661; 567 NW2d 478 (1997); MCL 750.193(3); MSA 28.390(3). On the other hand, a mere violation of parole conditions— such as failing to report—is not a prison escape. See MCL 750.193(3); MSA 28.390(3) (last sentence); see also
 
 Sarres, supra
 
 at 476-479. We do not decide whether defendant fits either of these categories.
 

 [3]
 

 “Consistent” is defined as “agreeing or accordant; compatible; not self-contradictory,” “constantly adhering to the same principles, course, form, etc.,” and “holding firmly together; cohering.”
 
 Random House Webster’s College Dictionary
 
 (1997).
 

 [4]
 

 In this case, defense counsel chose not to cross-examine the two witnesses about the substance of their grand jury testimony.
 

 [5]
 

 Before the grand jury Investigation, murder charges were twice filed against defendant and twice dismissed at the preliminary examination because of lack of evidence.
 

 [6]
 

 The prostitute gave police her sister’s name.