1EDWIN A. LOMBARD, Judge.
STATEMENT OF CASE
On July 17, 2001, the State charged Cleveland Tumblin with attempted second-degree murder, a violation of La. R.S. 14:(27)30.1. At his arraignment on July 19, 2001, the defendant pled not guilty. On September 12, 2001, the trial court denied the defendant’s motions to suppress the evidence and statement. Following a lunacy hearing on September 25, 2001, the defendant was found competent to proceed and assist counsel. On November 8, 2001, the jury convicted the defendant of aggravated battery. On December 17, 2001, the trial court denied the defendant’s motion for new trial. That same day, after the defendant waived all delays, the trial court sentenced him to ten years at hard labor. On April 12, 2002, the defendant was granted an out of time appeal. On July 12, 2002, the trial court denied the defendant’s motion to quash the multiple bill. On August 2, 2002, the motion to quash was argued and denied a second time. Also at that time, the defendant tendered a plea of guilty as charged to the multiple bill, and was ad judged a second offender. After the defendant waived all delays, the trial court vacated his original sentence and re-sentenced him to ten years at hard labor.

|,STATEMENT OF FACT

Officer Errol Allen testified that on May 16, 2001, at approximately 3:00 p.m. while on patrol on Martin Luther King Avenue near the B.W. Cooper Housing Development, a group of people fleeing a Safeway store parking lot flagged him down, pointing and telling him that someone was shooting in the parking lot. Officer Allen turned his car around and drove into the store parking lot, where he observed people ducking behind vehicles and pointing to the defendant walking away. Witnesses told the officer that the defendant had just shot someone. Officer Allen noticed that the defendant was carrying something in his hand, which he put behind a large oak tree. The defendant attempted to leave the scene on a bicycle, but the bicycle was chained to a railing. Allen drew his weapon as he ordered the defendant to lie down. When the defendant complied, Allen handcuffed him. As he was handcuffed, the defendant told Allen, “He took my money.” Allen then retrieved the object he saw the defendant place behind the tree. The object was a sawed-off shotgun. Officer Allen confiscated one spent twelve-gauge casing from the barrel of the shotgun, as well as one live shotgun round, two thirty-eight caliber rounds and one three fifty-seven Magnum round from the defendant’s clothing. After Allen secured the shotgun and placed the defendant in the police car, he called for medical aid for the victim, who was lying face down on the ground, with a wound to his right mid-back area.
Officer Meredith Acosta, an NOPD crime lab technician, testified that fingerprint testing on the shotgun proved negative for identifiable prints.
Mr. Albert Alfred testified that shortly before the shooting, he purchased a drink at the Safeway store. As he exited the store and walked through the parking lot, *1048 he saw the assailant point a shotgun at the victim. When Mr. Alfred yelled at |3the assailant, the assailant pointed the gun at him. Mr. Alfred ran and hid behind a van in the parking lot. Mr. Alfred peeked out from behind the van just as the assailant turned the shotgun on the victim again. The victim turned and began walking away from the assailant, when the assailant shot him. Mr. Albert yelled at the assailant again, and again the assailant pointed the gun at him. As Mr. Albert ran, he encountered Officer Allen and told him the assailant was armed and had just shot the victim. Mr. Albert identified the shotgun in court as the weapon the assailant used to shoot the victim. The police spoke to Mr. Albert on the scene, and he pointed out the defendant as the shooter. Mr. Albert also identified the defendant from a picture, and testified at trial that the police arrested the correct man.
The victim, Benoit Watson, testified that he has known the defendant for over ten years. At approximately 2:00 p.m. on the day he was shot, the victim spoke with the defendant at a friend’s house. At that time the defendant showed the victim a sawed-off shotgun and a three fifty-seven magnum. The defendant told the victim he wanted to pawn the pistol and asked if the victim had any money. The victim said he was not interested but that he would help the defendant find someone to whom he could pawn the gun. The defendant found a purchaser for the gun. The victim and defendant walked to the defendant’s sister’s house across the street from the convenience store, and the defendant placed the guns in the house. The victim sat and drank wine with the defendant while they waited for the purchaser to return with the money. When the defendant retrieved the guns from the house and began to brandish them, the victim left and walked across the street to the convenience store parking lot. As the victim talked to a friend, the defendant approached him and placed the gun against his head, demanding to 14know where his gun was. The victim brushed the defendant away and told him that the gun was where the defendant left it, on the porch across the street. The victim turned and walked away. He did not see the person who fired the shot but the next thing he knew people were telling him he had been shot. When the police arrived, the victim identified the defendant as the man who held the gun to his head. The victim stated that he and the defendant had never had any disagreements.
The State recalled Officer Errol Allen who reiterated that he detained and arrested the defendant based upon Albert Alfred’s identification of the defendant as the shooter. Officer Allen identified the defendant as the person Mr. Alfred said shot the victim.

ERRORS PATENT

A review for errors patent on the face of the record reveals none.

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, the defendant argues that the evidence is insufficient to support his conviction for aggravated battery. Specifically, the defendant maintains the State faded to negate the possibility of misidentification of the defendant as the perpetrator because witness Albert Alfred testified at trial that the defendant was not the shooter.
In reviewing the sufficiency of the evidence to support a conviction, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson *1049 standard “preserves the role of the jury as the factfinder in the case but it |fidoes not allow jurors ‘to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.’ ” State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 429. Nonetheless, credibility calls are within the fact-finder’s discretion and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Under the Jackson standard, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817, 820 (La.1987). When circumstantial evidence forms the basis for the conviction, the totality of such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, the circumstantial evidence rule is not a separate test from the Jackson standard; La. R.S. 15:438 is simply “an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found defendant guilty beyond a reasonable doubt.” State v. Wright, 445 So.2d 1198, 1201 (La.1984). Ultimately, the totality of the evidence must be sufficient to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Sutton, 436 So.2d 471 (La.1983). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Furgerson, 34,344 (La.App. 2 Cir. 3/2/01), 781 So.2d 1268, writ den. 2001-1102 (La.3/22/02), 811 So.2d 921. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Id.
When a defendant disputes identity, the State must negate any reasonable probability of misidentification. State v. Smith, 430 So.2d 31, 45 (La.1983).
| (;In this ease, Officer Allen testified that he interviewed Albert Alfred immediately after the shooting and that Alfred pointed out the defendant and told the officer that he [the defendant] “shot the man for nothing.” Based upon Alfred’s on the scene identification, Officer Allen apprehended the defendant.
Although Alfred denied at trial that the defendant was the shooter, he admitted that he saw the police arrest the shooter, and that the person the police arrested was the same person who did the shooting.
A prior statement by a witness which is “[o]ne of identification of a person made after perceiving the person,” is non-hearsay when the witness appears and is cross-examined on the statement. La. C.E. art. 801(D)(1)(c). Such a statement may be used assertively, as substantive evidence of guilt, and may be established through the testimony of one to whom the statement was made. This is so even if the witness denies making an identification or fails or is unable to make an in-court identification. State v. Johnson, 99-3462 (La.11/3/00), 774 So.2d 79, 80-81.
When Officer Allen first observed the defendant, he was carrying an object which Allen could not initially identify, but which he discovered to be a sawed-off shotgun when he recovered it from the area where the defendant placed it. The shotgun contained one spent twelve-gauge casing. When Officer Allen arrested the defendant, he told Allen, “He took my money.” The defendant had one five shotgun round in his pocket, two thirty-eight caliber rounds, and one 357 Magnum round. Witness Albert Alfred identified the shotgun seized by police as the weapon *1050 he observed the perpetrator use to shoot the victim.
The victim, Benoit Watson, testified that earlier on the day of the shooting, the defendant called him into the alley, and asked him whether he had any money. The defendant showed him a sawed-off shotgun and a 357 Magnum and told him 17that he was interested in pawning the pistol. Later, the victim was sitting with the defendant drinking wine, while the defendant waited for someone to whom he was going to pawn the pistol returned with money. The victim got worried when the defendant took the guns out again when a policeman was passing, so he walked down the street to the Safeway. The victim stated that the defendant confronted him at the Safeway, held the shotgun to his head, and asked him, “Man, you know, the guy that got my gun?” The victim told him, “Man, your gun was left over there with you.” The victim pushed the gun back and said, “Go ahead on.” The victim turned away, and the defendant turned away, and then everyone began to tell the victim he had been shot.
In this case, the defendant confronted the victim with a shotgun immediately before the victim was shot. An officer observed the defendant putting down an object, which was later determined to be a shotgun. Witness Albert Alfred pointed out the defendant to the officers as the shooter, and testified in court that the police arrested the shooter on the scene. The evidence is clearly sufficient to establish the defendant’s identity as the shooter. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 2
In a second assignment, the defendant argues the trial court erred in denying his motion to quash the multiple offender bill of information. The defendant maintains that the State failed to produce any evidence concerning the “cleansing period” between his prior offense and this present conviction. Moreover, he contends his motion to quash should have been granted because the trial court erred in stating that it would be bound by the decision of the Louisiana Supreme Court in State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272.
laThe determination of whether a defendant’s last previous discharge date is within the appropriate number of years of the commission of his instant offense is a question of fact to be resolved during a hearing on the habitual offender bill of information, at which evidence is presented on the issue. In this case, no hearing was held; hence, no evidence was presented. The defendant admitted the allegations in the habitual offender bill of information, and waived a hearing on the same.
On August 2, 2000, the date of the defendant’s habitual offender adjudication and sentence, the defendant did not argue that the discharge date on his armed robbery conviction was not within ten years of the commission of the instant offense. The only argument that the defendant made, or preserved, was the allegation that the relevant “cleansing period” was five years, not ten years. The trial court correctly stated that it was bound by State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272. This assignment of error, which was not preserved for appellate review, is without merit.

ASSIGNMENT OF ERROR NUMBER 3

In a final assignment, the defendant contends the trial court erred in adjudging him a second felony offender because the State presented no evidence to prove that he was discharged from custody for a 1980 conviction for armed robbery less than ten years prior to his arrest for his present conviction.
*1051 Although the record in this case does not contain a plea form to the habitual offender bill of information, the transcript of August 2, 2002, indicates that the defendant entered a plea of guilty to the habitual offender bill of information, apparently reserving his right to challenge the trial court’s determination that it would be bound by State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272.
IsAs noted previously herein, no hearing was held on the multiple bill. Having waived his right to a hearing, the defendant cannot challenge on appeal the sufficiency of the evidence which the State would have presented if there had been a hearing, but did not present because there was no hearing.

CONCLUSION

Accordingly, for the foregoing reasons, we affirm the conviction and sentence.
AFFIRMED.