WICKER, J.,
concurs in the result and assigns reasons.
hi agree with the writer’s conclusion to affirm the adjudications and dispositions.[2] But I respectfully concur with the writer’s analysis of the assignments of error regarding the statements.

The Parties

These are the parties who are involved in this matter:
The parties who were arrested for these offenses: (1) The adjudicated juvenile delinquent, who is identified as “DW.” (2) The codefendant who is being tried as an adult and who is identified as “JF.”
The victims: (1) Victim 1, “AW.” (2) Victim 2, “JD.”
The two state witnesses who recanted their police statements: (1) Eyewitness 1, “CB.” (2) Eyewitness 2, “BJ.”
The defense witness who testified he drove the juvenile and the codefendant JF to the scene: Driver, “CN.”[3]
The defense witness who testified he was on the bus and he did not see the juvenile with a gun: Bus Witness “TM.”

Underlying Facts

On February 19, 2009, Victim 1, AW and Victim 2, JD were shot in the Lincolnshire neighborhood after they exited a school bus. Victim 1, AW and Victim 2, JD were shot in the leg and arm, respectively. After the shooting, the victims were transported to the hospital where a .22 caliber 12projectile was removed from the arm of Victim 2, JD. Two eyewitnesses; namely, Eyewitness CB and Eyewitness BJ gave statements to the police the day of the shooting identifying the juvenile as one of the shooters. Detective Hunt testified that he had interviewed Eyewitness BJ three times and that he was twice recorded. He interviewed Eyewitness CB once.
Detective Hunt identified two photographic lineups that were introduced into evidence. He testified that Eyewitness BJ identified the codefendant, JF, in a photographic lineup. The second photographic lineup was shown to Driver CN, who identified the juvenile in the photographs shown. However, during cross-examination, Detective Hunt testified that he did not obtain any evidence from CN identifying the juvenile as holding the gun. Therefore, there was no photographic lineup in which a witness identified the juvenile DW as a shooter. The only identification of the juvenile DW as a shooter was made by statements given by Eyewitness BJ and Eyewitness CB the day of the shooting.
Eyewitness BJ and Eyewitness CB also provided the prosecutor with similar details on a later date. At the hearing, however, they recanted all of their prior statements identifying the juvenile DW as the shooter. They testified that them principal, Preston Gassery, forced them to identify the juvenile DW and that they lied in their previous statements. On the other hand, Mr. Gassery testified that he spoke to these witnesses at the scene but he *1065 denied forcing them to give any statements or threatening them in any way. The juvenile DW and the other male suspect codefendant JF were at the bus stop having been driven there by Driver CN. Driver CN gave a statement to the police the day after the shooting in which he stated that he noticed that after the shooting there was a gun in his car. At the hearing, however, Driver CN recanted that statement. He testified that he did not see |sa gun. Driver CN admitted at the hearing that he told the detective that when he dropped the juvenile DW and the other male suspect codefendant JF after the shooting, Driver Carl CN was told that he, Driver CN “did not see nothing.” At the hearing, however, he testified that the juvenile DW did not make this statement to him. Detective Hunt testified that he arrested the juvenile DW and the other male suspect codefendant JF for these offenses. He stated that the male suspect codefendant JF was being tried as an adult.

Introduction of Exhibits

Defense counsel argues that the judge erroneously based her adjudications upon exhibits never formally introduced into evidence. Defense counsel asserts that the prosecutor offered testimony from the two alleged eyewitnesses, BJ and CB, but the prosecutor never formally offered the entire statements into evidence.
CB’s and BJ’s statements were introduced into evidence. After CB and BJ testified, the court informed the prosecutor that he had not marked the statements for identification. Defense counsel objected to the introduction of the statements because the witnesses were present to testify. The court overruled defense counsel’s objection. Therefore, having overruled the defense counsel’s objection to the introduction of the statements, the court necessarily admitted the statements into evidence.

The Statements as Substantive Evidence of Guilt

Defense counsel argues that the judge based the adjudications upon BJ’s and CB’s unsworn out-of-court statements as impeachment evidence that was improperly used as substantive evidence of guilt.
In this case, these eyewitnesses recanted their out-of-court statements wherein they identified the juvenile DW as a shooter. Thus, the out-of-court | .statements were the sole evidence to establish DW’s guilt beyond a reasonable doubt.[4]
La. C.E. art. 801(D)(1)(c), Louisiana’s counterpart of Fed.R.Evid. 801(d)(1)(C), provides that a prior statement by a witness is not hearsay if “the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement” and the statement “is one of identification of a person made after perceiving the person.”
The Louisiana Supreme Court in State v. Johnson, 99-3462, p. 2 (La.11/3/00), 774 So.2d 79, 80 affirmed that when a non-party witness’s credibility is attacked through a prior inconsistent statement incriminating the accused, the evidence is *1066 generally not admissible for its assertive value as substantive evidence of guilt. However, the Court recognized the identification exception provided in La. C.E. art. 801(D)(1)(c).
Contemporaneous identifications generally are given much more credence; indeed, such identifications are considered reliable enough to justify their exclusion from the hearsay rule, even when the witness is unable to repeat the identification in the courtroom. Samuels v. Mann, 13 F.3d 522, 527 (2nd Cir.1993), cert. denied, 513 U.S. 849, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994) (Citations omitted).
The Johnson Court cited with approval United States v. Brink, 39 F.3d 419, 426 (3rd Cir.1994), and Jack B. Weinstein and Margaret A. Berger, Weinstein’s Evidence, § 801(d)(1)(C) [01], at 801-222(1993). Johnson, 99-3462 at 2-3, 774 So.2d at 80.
|,Jn Brink, the federal court stated: “Generally, evidence is admitted under Rule 801(d)(1)(C) [the federal counterpart to the Louisiana rule] when a witness has identified the defendant in a lineup or pho-tospread, but forgets, or changes, his testimony at trial.” (Citations omitted).
The Brink Court explained the federal counterpart to Louisiana’s identification nonhearsay rule:
Debate on the 1975 amendment to the Rule demonstrates Congress was aware that third parties would testify to the witness’s prior statements. See 121 Cong.Rec. 31,867 (1975) (statement of Rep. Hungate) (“The bill ... applies to situations where an eyewitness has previously identified a person out of court. It would admit into evidence testimony of that identification. For example, testimony by a police officer that at a lineup John Doe identified the defendant as the man who robbed his store.”). See generally, Jack B. Weinstein and Margaret A. Berger, Weinstein’s Evidence, ¶ 801(d)(l)(C)[01], at 801-222 (1993) (“If at trial the eyewitness fails to remember or denies that he made the identification, the previous statements of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect.”). Thus, Miller’s statement should have been admitted as substantive evidence.

Id.

In State v. Hester, 99-426, pp. 18-19 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 108, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342, this Court held that La. C.E. art. 801(D)(1)(c) applied to a formal photographic identification procedure, thereby limiting the type of statement subject to the nonhearsay identification rule. However, Hester was decided before the guidance provided by the 2002 Louisiana Supreme Court case of State v. Stokes, 01-2564, pp. 1-2 (La.9/20/02), 829 So.2d 1009, 1010 (Per Curiam), where the Louisiana Supreme Court held:
A prior statement by a witness which is “[o]ne of identification of a person made after perceiving the person,” is non-hearsay when the witness appears and is cross-examined on the statement. La. C.E. art. 801(D)(1)(c). Such a statement may be used assertively, as substantive evidence of guilt, and may be established through the testimony of one to whom the ^statement was made. This is so even if the -witness denies making an identification or fails or is unable to make an in-court identification. State v. Johnson, 99-3462, pp. 2-3, 774 So.2d 79, 80-81. The federal rule is similar. See Fed.R.Evid. 801(d)(1)(C); United States v. Brink, 39 F.3d 419 (3rd Cir.1994); United States v. Jarrad, 754 F.2d 1451 (9th Cir.1985). See also 5 Weinstein’s Federal Evidence, (MB) § 801.23[1], p. *1067 801-39 (2nd ed., Joseph M. McLaughlin, ed., 2002).
By referring to “a prior statement,” the Louisiana Supreme Court did not limit the rule to formal photographic lineups or pho-tospreads. In fact, the Stokes Court cited with approval a case involving photospread statements as well as a case involving a non-photospread statement, U.S. v. Jarrad, 754 F.2d 1451 (9th Cir.1985), cert. denied, Jarrad v. United States, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985), cert. denied, McManamy v. United States, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985) and United States v. Brink, 39 F.3d 419, 426 (3rd Cir.1994), respectively.
In Jarrad, the court held that an agent’s testimony as to a witness’s identification was not hearsay. In that case the testimony took place during an attempted photo-spread identification. Jarrad, 754 F.2d at 1456. In Brink, at trial, the witness testified she was unable to recall the bank robber’s eye color. The FBI agent testified that the day after the robbery, she told him the bank robber had dark colored eyes. Brink, whose eyes are light hazel, sought to use the prior statement as substantive evidence of his innocence, but the court refused. The Brink court held that “the fact that FBI agent McEachern, rather than Miller, recited Miller’s statement at trial does not preclude introducing her statement as substantive evidence.” Brink, 39 F.3d at 424-26, 426.
In my view, the latest pronouncement from the Louisiana Supreme Court in Stokes recognizes that the identification rule applies not only to photographic lineups or photospreads but to statements of identification as |7well. Accord: State v. Brue, 09-2281 (La.App. 1 Cir. 5/7/10), 2010 WL 1838383, *10 (unpublished) (rule to include an out-of-court unsworn and uncorroborated videotaped statement in response to police questioning, where witness refused to testify or answer questions.); State v. Tumblin, 02-1643, p. 6 (La.App. 4 Cir. 9/17/03), 857 So.2d 1045, 1049 (rule applied to an out-of-court statement made to the police immediately after the shooting where the witness recanted the statement.).
Accordingly, I would hold that the out-of-court statements made to the police near the time of the incident are nonhear-say evidence and could be used as substantive evidence of guilt.
Furthermore, even assuming the non-hearsay identification rule does not apply to this case, I would hold that the following nonhearsay rule applies: La. C.E. art. 801(D)(1)(a), the prior inconsistent statement by a witness.
I recognize the extraordinary difficulty the writer herein faced in attempting to reconcile State v. Allien, 366 So.2d 1308, 1310 (La.1978) and State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065 and the Allien-Cousin progeny with legislative changes in the hearsay rules.
In State v. Lubrano, 563 So.2d 847, 849 (La.1990) (Per Curiam) (emphasis in original), the Louisiana Supreme Court held that where the state’s case rests entirely on hearsay evidence, counsel’s failure to object does not necessarily foreclose inquiry into the reliability of the result. In that case, there was no other independent evidence to indicate that the hearsay evidence, the defendant’s timecards, was accurate. 563 So.2d at 850. In State v. Jones, 610 So.2d 782, 784 (La.1992) (emphasis in original), the court explained that when the state’s case rests entirely on evidence 18regarding out-of-court assertions of fact, that court is not precluded from inquiring into the reliability of the result for due process purposes.
“Under a modern view of the hearsay rule, [inconsistent] statements [of a wit *1068 ness] are exempt from the rule and admissible as substantive evidence of the facts stated.” 1 McCormick on Evidence § 34, at 149 (6th ed.2006).
Traditionally, the prior statement has been admissible as substantive evidence to prove the truth of the matter asserted only when falling within an established exception to the hearsay rule. 2 McCormick on Evidence § 251, at 148 (6th ed.2006). “This position has come under substantial attack on both logical and practical grounds.” Id. The rationale behind the “orthodox/traditional view is that the witness’s previous statement is hearsay resting on the credit of the declarant, who, when the statement was made, was not under oath, in the presence of the trier of fact, or under cross-examination.” Id. “As Wigmore, who originally adhered to the traditional view, observed: 'Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied.’ ” 2 McCormick on Evidence § 251, at 149. One persuasive factor against the orthodox/traditional rule is the superior trustworthiness of the earlier statements on the basis that those statements are more recent in time. Id. There has been a substantial movement to completely abandon the orthodox/traditional view. 2 McCormick on Evidence § 251, at 150. Evidence of a prior inconsistent statement, when the declarant is on the stand to explain it, has the major safeguards of examined testimony. 2 McCormick on Evidence § 251, at 151.
^Nevertheless, even while clearly admissible as substantive evidence, jurisdictions disagree with whether such a statement standing alone is sufficient to sustain a conviction. 2 McCormick on Evidence § 251, at 151, n. 19.
In People v. Chavies, 234 Mich.App. 274, 593 N.W.2d 655 (Mich.App.1999), Leave to Appeal Denied, 461 Mich. 930, 605 N.W.2d 320 (1999), Chavies v. Michigan, 531 U.S. 841, 121 S.Ct. 105, 148 L.Ed.2d 63 (2000), overruled on other grounds by People v. Williams, 475 Mich. 245, 716 N.W.2d 208 (Mich.2006), the Michigan court noted:
The sufficiency of the evidence is an issue separate and distinct from the question of admissibility. In the context of prior inconsistent statements, the question is whether, viewing the witnesses’ [prior] grand jury testimony in the light most favorable to the prosecution, the evidence was so unreliable that no reasonable trier of fact would accept it as sufficient to support defendant’s convictions beyond a reasonable doubt. 593 N.W.2d at 660 (Citation omitted).
In Chavies, the court described the conflicting approaches to the question of whether out-of-court statements alone would be sufficient to support a conviction where the witness recanted testimony. Id. 593 N.W.2d at 660-661. The court noted that Louisiana was one of those states that still adhered to the common law rule that prior inconsistent statements are hearsay inadmissible as substantive evidence, and may only be used for impeachment. 593 N.W.2d at 661, citing State v. Allien, 366 So.2d 1308, 1310 (La.1978).
In Allien, the Court noted that it had consistently held that a prior inconsistent statement of a witness cannot be admitted as substantive evidence of the truth of its content; the effect of its admissibility is limited to impeaching the credibility of the witness and his testimony. 366 So.2d at 1310. In State v. Jackson, 526 So.2d 1261, 1263 (La.App. 3 Cir.1988), the |10Third Circuit explained that when the prior inconsistent statements were introduced in order to impeach the credibility of the witness, they were nonhearsay as they were *1069 not being offered to prove the matter asserted therein. Thus, the prior inconsistent statements used as impeachment evidence could not be substantive evidence. Id.
In 1998, the Louisiana Supreme Court reaffirmed Allien in State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065. At the time, La. C.E. art. 802(D)(1)(a) classified as nonhearsay a prior statement of a witness at trial that was inconsistent with the witness’s trial testimony and was given under oath at the preliminary examination or prior trial of the accused. Thus, under the facts of that case, the inconsistent statements were hearsay. 96-2973 at 7, 710 So.2d at 1069. La. C.E. art. 607(D)(2), however, permitted then as it does now the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of a witness. The Court held that: “Although such evidence is admissible for impeachment, this court has steadfastly recognized that “when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant’s guilt. ’ ” 96-2973 at 8, 710 So.2d at 1069.
Thus, when Cousin was decided, only those prior statements of a witness at trial that were inconsistent with the witness’s trial testimony and were given under oath at the preliminary examination or prior trial of the accused were nonhearsay and could be used as substantive evidence. 96-2973 at 10, 710 So.2d at 1070 (The Court explained that when the Louisiana State Law Institute proposed the Louisiana Code of Evidence to the Legislature, the substantive impeachment rule was thus restricted.).
InThe restriction changed in 2004. La. C.E. art. 801(D)(1)(a) was amended by 2004 La.Acts., No. 694, § 1, effective August 15, 2004. The current article provides that a statement is not hearsay if:
(1) Prior statement by witness. The de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement^]
In State v. Rankin, 42,412 (LaApp. 2 Cir. 9/19/07), 965 So.2d 946, writ denied, 07-2067 (La.3/7/08), 977 So.2d 897, the Second Circuit concluded that the AllieUr-Cousin line of cases predated the 2004 amendment, which now allows those La. C.E. art. 801(D)(1)(a) nonhearsay statements as admissible for their assertive value. 42,412 at 6-7, 965 So.2d at 950-51.
Likewise, the Allien-Cousin line of cases predated the 1995 amendment to La. C.E. art. 801(D)(1)(c). By 1995 La. Acts, No. § 1 the Legislature amended the article to provide that a statement is not hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is “one of identification of a person made after perceiving the person[.]” La. C.E. art. 801(D)(1)(c). In 2000, the Louisiana Supreme Court, in State v. Johnson, 99-3462, p. 2 (La.11/3/00), 774 So.2d 79, 80, the Court recognized the identification rule provided in La. C.E. art. 801(D)(1)(c). Therefore, in Johnson, the Louisiana Supreme Court diverged from the orthodox/traditional rule expressed in Cousin.
*1070 In the present case, the declarants, who recanted their out of-court statements to the police were subject to cross-examination at the hearing. 112The prosecutor directed each declarant to their statements and allowed them the opportunity to admit the facts. Thus, under Article 801(D)(1)(a) the question presented herein is whether there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statements. In this case where the state’s case rests entirely on evidence regarding out-of-court assertions of fact, independent corroboration affords the juvenile due process because such corroboration ensures the reliability of the resulting adjudications. State v. Lubrano, 568 So.2d 847, 849 (La.1990) (Per Curiam); State v. Jones, 610 So.2d 782, 784 (La.1992).
In Chavies, supra, the court noted that other states require some degree of corroboration before a prior inconsistent statement will be found to be sufficiently reliable to support a conviction. Id. (Citations omitted). In State v. Mancine, 124 N.J. 232, 248, 251-252, 590 A.2d 1107, 1117 (1991), the New Jersey court held: “A prior inconsistent statement for which substantial evidence exists corroborating any of its specific elements and enhancing its seeming reliability is corroborated in its entirety and may be used for all purposes.” The court held that a prior inconsistent statement may solely support a conviction even without corroboration of each element of the crime under these circumstances: (1) The statement is generally corroborated. (2) Its reliability is supported by the circumstances under which it was given. (3) The defendant has the opportunity to cross-examine the declarant. 124 N.J. at 252, 590 A.2d at 1117.
One of the circumstances here showing corroboration is that the two witnesses gave the same statement to the police identifying the juvenile as the shooter. In the analogous case of Henry v. State, 861 P.2d 582, (Alaska App.1993), the Alaska court explained that the rule governing corroboration is a flexible one that is grounded in common sense. 861 P.2d at 587. It held | TSthat corroborating evidence is sufficient when it induces a rational belief in the truthfulness of a witness’s testimony. Id. (Citation omitted). The court concluded that the “independent accusations of sexual abuse” of two victims who recanted their prior inconsistent statements was sufficient corroborating evidence. In the initial statement, one victim told the police about the abuse of the other victim. Shortly afterwards, the other victim corroborated that accusation without knowing that that victim had already made a similar accusation. The circumstances gave the jurors a rational basis to distrust the victims’ recantations at trial and to credit their earlier statements to the authorities and their testimony at a grand jury. Thus, the requirement of corroboration was met, and the jury’s verdicts were supported by sufficient evidence. Id.
Bearing these precepts in mind, I would note that there are sufficient indicia of reliability in this case. I acknowledge that the two witnesses’ inconsistent statements were the only evidence directly implicating the juvenile in the attempted murders. There was no independent corroboration of the witnesses’ statements that the juvenile was the shooter. However, both witnesses gave statements to the police on the day of the offenses wherein they identified the juvenile that substantially matched the testimony they later gave to the prosecutor. They also corroborated each other’s version of the events by each identifying the juvenile as the shooter. Also, the driver, CN gave a statement to the police wherein he said he saw a gun in the car after the shooting. Although he recanted that statement at the hearing, his police state *1071 ment was consistent with the statements by the two witnesses who in their earlier police statements identified the juvenile as a shooter. Additionally, several of the circumstances surrounding the statements were corroborated independently at the hearing: (1) There was [ 14undisputed testimony that the juvenile DW and the male suspect JF were at the scene; (2) Eyewitness CB testified at the hearing that before the shooting, he observed the two victims talking to the defendant and another person. (3) Eyewitness CB testified that he saw “two dudes just shooting.” (4) Driver CN testified that after he dropped off the juvenile DW and the other male after the shooting, he was told that he “didn’t see nothing.” That statement suggests guilty knowledge.
The evidence as a whole, viewed in the light most favorable to the prosecution, was sufficient to support DW’s adjudications. Determining the weight of the police statements and resolving credibility disputes was within the exclusive province of the trier of fact.
Accordingly, while I agree with the writer to affirm, I respectfully concur in the result.

. The Louisiana Children’s Code refers to a judgment of disposition rather than a sentence. La. Ch.C. arts. 684(A) and 678(A).

. Although this witness testified that he was 18 years of age at the time of the hearing, I prefer using his initials in this juvenile proceeding to protect the juvenile’s privacy.

. Defense counsel did not specifically object to the introduction of the statements on the basis that they were hearsay evidence which could not be used as substantive evidence. In fact, defense counsel attempted to introduce out-of-court statements in order to show a discrepancy between the statement and the affidavit for the search warrant. In this regard, defense counsel argued that the affidavit stated that both witnesses identified the juvenile DW by his full name where the recorded statement showed otherwise. The prosecutor objected on the basis that the transcribed testimony was hearsay. The judge stated that she did not think defense counsel could introduce the statement at that point, explaining that eyewitness CB would be available for cross-examination.