*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AJHAUN LYNN DAVIS,

        Defendant-Appellant.

UNPUBLISHED
March 24, 2022

No. 351578
Wayne Circuit Court
LC No. 19-004975-02-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KERRIION ANTONIO POPE,

        Defendant-Appellant.

No. 352161
Wayne Circuit Court
LC No. 19-004975-01-FC

Before: BOONSTRA, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants Ajhaun Lynn Davis (Davis) and Kerriion Antonio Pope (Pope) appeal by right their convictions and sentences entered after a joint jury trial before separate juries. In Docket No. 351578, Davis was convicted of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Davis to life in prison without parole (LWOP) for the felony murder conviction, a prison term of 35 to 60 years for the armed robbery conviction, and two-year prison terms for each count of felony-

---

[1] See *People v Davis*, unpublished order of the Court of Appeals, entered January 15, 2020 (Docket Nos. 351578 and 352161).

firearm. In Docket No. 352161, Pope (who was 17 years old at the time the offenses were committed) was convicted of first-degree felony murder, armed robbery, two counts of felony-firearm, and two counts of witness bribing, intimidating, or interfering, MCL 750.122(7)(b). The trial court sentenced Pope to prison terms of 33½ to 60 years for the felony murder and armed robbery convictions, 2 to 10 years for each count of witness bribing, intimidating, or interfering,[2] and two years for each count of felony-firearm. We vacate Davis's convictions in Docket No. 351578; in Docket No. 352161, we affirm Pope's convictions but remand for resentencing regarding only his armed robbery conviction.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from the shooting death of Marquis Hill on April 22, 2019 in Inkster, Michigan. Keilon Pope (Keilon) testified at trial[3] that he was Pope's older brother and a close friend of Davis's. He lived at 4442 Spruce Street in Inkster with his girlfriend, Pope, and several other family members. Keilon claimed, however, that he could not remember anything about the shooting, about having answered questions in response to an investigative subpoena, or about previously testifying in this case. Over defense counsels' objections, the trial court agreed that the prosecution could admit Keilon's April 24, 2019 investigative subpoena testimony as substantive evidence.

In pertinent part, Keilon previously testified that Davis had called him on the morning of April 22, 2019, and had told Keilon that "he had a lick on the floor," which Keilon understood to refer to a robbery. Davis asked if Pope was there and whether Pope's .45 caliber pistol was at the house. Keilon testified that he anticipated that Davis would be coming over to the house to get Pope's gun to use in a robbery. Pope returned home around noon, and Davis arrived approximately 45 minutes later. Keilon testified that he and several others, including Davis, were outside smoking marijuana while Davis exchanged text messages with Hill trying to arrange a place to meet so that Davis could purchase marijuana from Hill. Pope and Davis eventually left the house together; Keilon testified that he believed, based on the way he carried himself and adjusted his jacket, that Pope was armed with his pistol. Approximately 10 to 15 minutes later, Keilon heard several gunshots.

Pope and Davis ran back to Pope's house together. Although Keilon testified that he did not see a gun, he noticed that Davis had a black backpack that Keilon believed was filled with marijuana. According to Keilon, Pope admitted shooting Hill, but claimed that he did so only because Hill had reached for a gun. While Pope was showering, Davis told Keilon that he returned to Hill's vehicle to retrieve the backpack with the marijuana after Pope shot Hill. A friend of Davis's testified that she was present at the home that day and also observed Davis with a black backpack she had not seen before. Pope's girlfriend testified that Pope had admitted his

---

[2] Pope raises no specific arguments on appeal concerning these charges, which stem from his communications with his girlfriend while in jail awaiting trial.

[3] Keilon testified under a grant of immunity.

involvement in the incident and that he "hit a lick" or robbed someone for marijuana with the assistance of a person she did not know.

Both defendants elected to take the stand in their own defense and provided substantially similar testimony about the shooting. Davis explained that he had a history of purchasing marijuana from Hill and arranged a deal with Hill on April 22, 2019, because Hill had indicated that he had high-quality marijuana available at a low price. Davis and Pope met with Hill and entered his car, with Hill in the driver's seat, Davis in the front passenger seat, and Pope in the backseat. Pope and Davis both planned to make a purchase, but when Hill arrived they realized the marijuana was not of satisfactory quality. Davis told Hill that he was no longer interested, prompting Hill to point a gun at Davis and demand that Davis, "[G]ive [him] everything." Pope testified that he then fired his gun in the direction of the front driver's seat, believing that Hill was about to shoot Davis. The three men exited the vehicle as Hill and Pope continued to exchange gunfire. Defendants said they ran back to Pope's house without taking any of Hill's marijuana. Davis specifically denied ever possessing a black backpack, full of marijuana or otherwise, on the day of the shooting.

Pope's trial testimony differed significantly from the statement he gave to police after the shooting, at which time he admitted that he and Davis had planned to rob Hill. Pope told police that Davis had contacted him about a robbery, that Davis had brought the gun, and that, during the exchange with Hill, Pope did not fire a gun but did "hear[] a shot go off."

Defendants were convicted and sentenced as described. These appeals followed.

II. DOCKET NO. 351578

Davis argues on appeal that the trial court erred by refusing to instruct his jury regarding self-defense or defense of others. We agree.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Craft*, 325 Mich App 598, 604; 927 NW2d 708 (2018), quoting *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (quotation marks omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Craft*, 325 Mich App at 604.

The trial court is responsible for instructing the jury on the applicable law. *Everett*, 318 Mich App at 528. In order to be entitled to an instruction regarding an affirmative defense, the defendant must produce some evidence in support of each element of the defense. *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013). If the evidence supports a self-defense or defense-of-others theory, the jury must be instructed accordingly. *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020), amended by 505 Mich 1112 (2020). However, a trial court's failure to instruct the jury on a defense, even if erroneous, does not provide an automatic basis for reversal. *Everett*, 318 Mich App at 528. For preserved, nonstructural, constitutional error, reversal is unnecessary if the beneficiary of the error establishes "beyond a reasonable doubt that there is no reasonable possibility that the [error] complained of might have contributed to the conviction." *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994) (quotation marks

and citation omitted). See also *People v Rajput*, 505 Mich 1112 (2020) (remanding for determination of whether denial of self-defense instruction was harmless beyond a reasonable doubt).

Recently, in *People v Leffew*, __ Mich __; __ NW2d __ (2022) (Docket Nos. 161797 and 161805), our Supreme Court extensively discussed the defense-of-others defense at both common law and as modified by Self Defense Act (SDA) MCL 780.971 *et seq*. MCL 780.972(1):

> Under the defense-of-others doctrine, "[o]ne may use force in defense of another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm; deadly force is permissible to repel an attack which reasonably appears deadly." 3A Gillespie, Michigan Criminal Law & Procedure (2d ed.), § 91:59, p. 399; see also 2 LaFave, Substantive Criminal Law, § 10.5, p. 222 (3d ed.). As with self-defense, defense of others is generally not available to a person who is the initial aggressor. See *People v Riddle*, 467 Mich 116, 120 n 8; 649 NW2d 30 (2002).

> Though invoked less commonly than its more popular sibling, self-defense, the defense-of-others doctrine has deep roots in Michigan jurisprudence. In 1860, we addressed the narrow class of "excusable homicide[s]" and noted that the accused in such cases acts in "the defense of [his] own life, *or that of his family, relatives or dependants* [sic], within those relations where the law permits the defense of others as of one's self." *Pond v People*, 8 Mich 150, 175 (1860) (emphasis added). In the century and a half following *Pond*, Michigan courts have repeatedly recognized the common-law defense-of-others doctrine. See *People v Curtis*, 52 Mich 616, 622-624; 18 NW 385 (1884) (the defendant in a homicide case "was entitled and bound to take an interest in the life and safety of his brother," and his use of a deadly weapon to that end was not necessarily evidence of malice); *People v Burkard*, 374 Mich 430, 437-438; 132 NW2d 106 (1965), partially abrogated on other grounds by *People v Heflin*, 434 Mich 482; 456 NW2d 10 (1990) (the defendant was entitled to an accurate jury instruction related to his claim that his act of homicide was based on his belief that his wife's life was in danger); *People v Wright*, 25 Mich App 499, 503; 181 NW2d 649 (1970) (per *Curtis*, the defendant had a right to protect his brother, even though that right had no application on the facts of this manslaughter case); *People v Kurr*, 253 Mich App 317; 654 NW2d 651 (2002) (applying the defense-of-others doctrine in a homicide prosecution where the pregnant defendant stabbed a man who was repeatedly punching her stomach); see also Bendinelli & Edsall, *Defense of Others: Origins, Requirements, Limitations and Ramifications*, 5 Regent U L Rev 153 (1995) (tracing the common-law history of the defense-of-others doctrine, as the early English self-defense doctrine gradually evolved to include defense of family members and, eventually, strangers).

> \* \* \*

> [T]he SDA . . . *expanded*, rather than contracted, the ability to invoke the affirmative defenses of self-defense and defense of others. The SDA codified and

-4-

expanded "the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." [*People v*] *Dupree*, 486 Mich [693,] [][] 708; 788 NW2d 399 [(2010)]. Section 2 of the SDA removed the traditional common-law duty to retreat, so long as the individual engaging in self-defense or defense of others was not committing or had not committed a crime and had a legal right to be where they were when they used force. MCL 780.972; 1 Gillespie, § 1:63, pp. 162-163.

But aside from limiting one's duty to retreat, the statute did not modify or abrogate the common-law defenses of self-defense or defense of others. *People v Conyer*, 281 Mich App 526, 530; 762 NW2d 198 (2008); see also *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). As we have said many times, "[w]e will not lightly presume that the Legislature has abrogated the common law." *Velez v Tuma*, 492 Mich 1, 11; 821 N.W.2d 432 (2012); *Dupree*, 486 Mich at 706; 788 N.W.2d 399; *Triplett*, 499 Mich at 58; 878 N.W.2d 811. But here we don't have to presume because the Legislature left no doubt: § 4 of the SDA states that the statute "does not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state. . . ." MCL 780.974. [*Leffew*, slip op at 10-13.]

The Court in *Leffew* noted that the defense was available as to at least some non-assaultive crimes, holding that "[t]he applicability of the defense must be determined on the particular facts of each case, not the charges the prosecution brings." *Id*. at ___; slip op at 14. The Court concluded that the defendants' counsel had performed below an objective standard of reasonableness for failing to request a *common-law* defense-of-others instruction, pointing out that, although the statutory defense was precluded by the SDA's "stand your ground" provision, "the SDA neither abrogated nor limited the common-law affirmative defense of defense of others." *Id*., slip op at 14. The Court held that the defendants had presented evidence in support of the defense-of-others theory, but that the lack of an instruction on the defense of others deprived the jury of any path to a verdict of acquittal. *Id*. at ___; slip op at 21-22, 26-27.

In this case, Pope's jury was instructed on self-defense and defense of others. Counsel for Davis requested an instruction on defense of others based on his theory that Pope had shot Hill in defense of Davis. The trial court denied the request, stating that "[a] person that says they did nothing did not act in self-defense." The trial court's reasoning was incorrect. As Davis points out on appeal, the trial court in *Rajput*, 505 Mich at 9-10, refused to give an instruction on self-defense when the defendant claimed that a person he was aiding committed a homicide in self-defense. The Supreme Court rejected the trial court's reasoning because the defendant would be relieved of liability if the principal had acted in self-defense. *Id*. at 11. The same rationale applies in this case. Davis's theory was that Hill had tried to rob defendants and that Pope had shot Hill to defend Davis. There was evidence to support this theory, as both defendants testified that they were simply attempting to purchase marijuana from Hill when Hill pointed a gun at Davis in an attempted robbery. A .40 caliber gun was found near Hill's body, an extra .40 caliber magazine was located in the glovebox of Hill's vehicle, and a concealed pistol license was discovered in his wallet. Both .40 caliber and .45 caliber casings were discovered at the crime scene, demonstrating that at least two people were shooting, consistent with defendants' version of the events. The fact that Davis denied having personally shot Hill is immaterial—if the jury had believed that Pope

shot Hill in defense of Davis, it would have been appropriate for the jury to find Davis not guilty of felony murder as an aider and abettor. *Id.*; see also *Leffew*, ___ Mich at ___; slip op at 10. The trial court erred by concluding otherwise.

Moreover, under *Leffew*, we cannot conclude that the trial court's error was harmless. In *Leffew*, defense counsel neglected to request a defense-of-others instruction for their clients, *id.* at 6, Micheline and Jeremiah Leffew, an omission that our Supreme Court deemed deficient performance under *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Leffew*, ___ Mich at ___, slip op at 17. The Court then addressed whether the failure to request a defense-of-others instruction prejudiced the defendants. Under the *Strickland* standard, the defendants had to demonstrate "a reasonable probability of a different outcome had the error not been committed." *Id.* at 18, citing *Strickland*, 466 US at 694. Such a probability existed, the Supreme Court reasoned, because a defense-of-others instruction "would have come with a corollary jury instruction explaining that the prosecution had to *disprove* that Micheline acted in defense of [another] beyond a reasonable doubt." *Leffew*, ___ Mich at ___, slip op at 20-21 (emphasis added). Furthermore, the Supreme Court stressed as to Micheline, "[h]er defense hinged on an excuse the law recognizes—defense of others—but those dots were never connected for the jury." *Id.* at p 21. Regarding Jeremiah, the Court observed that even if the jury was not convinced that Micheline "acted with just cause or excuse" and the two defendants shared the same factual defense, a court cannot "assume that jurors, when tasked with judging two defendants in a joint trial, would, without being instructed to do so, impute jury instructions for one to defendant to the other." *Id.* at 24 (quotation marks omitted).

In this case, Pope's jury was instructed that in order to find that he had acted in self-defense or in defense of others, it was first required to determine that "the defendant must not have been engaged in the commission of a crime." This instruction tracks with the modification of the common-law duty to retreat found in the SDA; MCL 780.972(1) limits the applicability of the SDA to "[a]n individual who has not or is not engaged in the commission of a crime" at the time deadly force is used. See also *Guajardo*, 300 Mich App at 36 (discussing limitation in self-defense statute).

However, as the Supreme Court observed in *Leffew*, "aside from limiting one's duty to retreat, the [SDA] did not modify or abrogate the common-law defenses of self-defense or defense of others." *Leffew*, ___ Mich at ___, slip op at 13. See also MCL 780.974 (providing that the SDA "does not diminish an individual's right to use deadly force or force other than deadly force in self-defense of another individual as provided by the common law of this state . . . ."). Davis was therefore entitled to a jury instruction on *common-law* self-defense (even though he may not have been entitled to a jury instruction under the SDA.

Davis's jury was not instructed on common-law self-defense, however. Davis's counsel did request the same SDA instruction that Pope's jury had received. The trial court denied that request. Although Davis's counsel did not specifically request a common-law instruction, the trial court's holding that the defense was not available because Davis had said "that he did nothing" leads us to believe the result would have been the same if counsel had elaborated (or been able to elaborate) on the issue. And, as in *Leffew*, the trial court's ruling left the jury without the means to acquit Davis if it determined that Pope or Davis had been "engaged in the commission of a crime" when the shooting took place. MCL 780.972(1). Because, at a minimum, both defendants

admitted that they met Hill to illegally purchase marijuana, we conclude that the error was not harmless beyond a reasonable doubt. See *Rajput*, 505 Mich at 12.

Davis's jury should have been instructed on the common-law defense of others and should have been permitted to consider such issues as whether Hill was the initial aggressor or whether the duty to retreat was implicated. *Rajput*, 505 Mich at 12. Because we vacate his sentences and remand for a new trial on the basis of this error, we decline to address the remainder of Davis's arguments on appeal.

## III. DOCKET NO. 352161

### A. INVESTIGATIVE SUBPOENA TESTIMONY

Pope argues on appeal that the trial court erred by admitting Keilon's investigative subpoena testimony as substantive evidence. We disagree.

To the extent that Pope's claim of error rests on the application of evidentiary rules, this issue was preserved below by a timely objection from his attorney. *Thorpe*, 504 Mich at 252. However, Pope's trial counsel did not object on the basis that the challenged evidence violated the Confrontation Clause, so Pope's constitutional claim is unpreserved. *Id*.

Preserved claims of evidentiary error are reviewed for an abuse of discretion. *People v Clark*, 330 Mich App 392, 428; 948 NW2d 604 (2019). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Craft*, 325 Mich App at 604. We review unpreserved claims for plain error affecting the defendant's substantial rights. *Brown*, 326 Mich App at 195.

We note that Pope's evidentiary argument is arguably not properly before this Court, as it falls outside the scope of his statement of the question presented, which frames this issue as strictly a matter of constitutional law. *People v Mysliwiec*, 315 Mich App 414, 420; 890 NW2d 691 (2016). In any event, we conclude that his evidentiary argument lacks merit.

The trial court ruled that Keilon's investigative subpoena testimony was substantively admissible as a prior inconsistent statement under MRE 801(d)(1)(A), citing this Court's opinion in *People v Chavies*, 234 Mich App 274; 593 NW2d 655 (1999), overruled in part on other grounds by *People v Williams*, 475 Mich 245 (2006). The defendant in *Chavies* challenged the admission of grand jury testimony from two witnesses, arguing that their lack of memory at trial was not inconsistent with their grand jury testimony for purposes of MRE 801 and that they were unavailable and not subject to cross-examination for purposes of MRE 804. *Id*. at 281. This Court concluded that the inadmissibility of the prior testimony under MRE 804 was harmless because the testimony was properly admitted under MRE 801(d)(1)(A). *Id*. at 284.

MRE 801(d)(1)(A) provides that a statement is not hearsay if

[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .

In assessing whether the witnesses' grand jury testimony fell within the scope of this rule, the *Chavies* Court accepted as persuasive federal precedent regarding the nearly identically worded federal rule of evidence, FRE 801(d)(1)(A). *Chavies*, 234 Mich App at 282. Specifically, the Court cited federal authority reasoning that "for purposes of FRE 801(d)(1)(A), inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or change of position." *Id*. (quotation marks and citation omitted). Therefore, because the witnesses testified at trial that they could not remember anything, despite having implicated the defendant in their grand jury testimony, their former testimony satisfied the inconsistency requirement of MRE 801(d)(1)(A). *Id*. at 282-283.

The trial court correctly applied *Chavies* in admitting Keilon's investigative subpoena testimony. Pope concedes that the investigative subpoena hearing was a "hearing" for purposes of MRE 801(d)(1)(A), but argues that Keilon's testimony at trial was not inconsistent. But Keilon testified at trial that he could not remember anything about the events surrounding the shooting, nor did he recall making any of the incriminating statements reflected in the transcript of his former testimony. *Chavies* makes clear that "evasive answers" and an "inability to recall" in these circumstances constitutes inconsistent testimony that renders prior sworn statements admissible under MRE 801(d)(1)(A). *Id*. Consequently, the trial court did not abuse its discretion by admitting Keilon's prior sworn testimony from the investigative subpoena hearing.

This Court's opinion in *Chavies* further demonstrates that Pope's constitutional argument must also fall:

> Regarding defendant's right of confrontation, the Supreme Court has held that, when witnesses are present at trial and could be cross-examined about their statements—even though they claim to remember nothing—the witnesses are "available" for cross-examination within the meaning of the Confrontation Clause. *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) . . . . "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Owens*, *supra* at 559 (quoting *Kentucky v Stincer*, 482 US 730, 739; 107 S Ct 2658; 96 L Ed 2d 631 [1987]). "It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination . . .) the very fact that he has a bad memory." *Owens*, *supra* at 559 (citation omitted). "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." *Owens*, *supra* at 560. Therefore, although the witnesses claimed to remember nothing at trial, defendant's right of confrontation was not violated by the admission of their grand jury testimony. [*Id*. at 283 (alterations in original).]

*Chavies* remains binding on this point and compels the conclusion that admission of Keilon's prior testimony did not violate Pope's right to confrontation because Keilon testified at trial and was therefore available for cross-examination, even if such examination was limited by Keilon's poor memory. MCR 7.215(J)(1). No error, plain or otherwise, occurred with respect to this issue.

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Pope also argues that he was denied the effective assistance of counsel when his attorney failed to move to sever his trial from Davis's, or to properly prepare him to testify.  We disagree. Pope filed a motion for remand with this Court for the purpose of raising this issue below, which motion this Court denied.[4]  In the absence of an evidentiary hearing, our review is limited to mistakes apparent on the record.  *Muhammad*, 326 Mich App at 63.

Again, claims of ineffective assistance of counsel involve mixed questions of fact and constitutional law.  *Hoang*, 328 Mich App at 63.  This Court reviews factual findings for clear error and constitutional questions de novo.  *Id*.  As noted earlier, a defendant pressing a claim of ineffective assistance of counsel must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."  *Trakhtenberg*, 493 Mich at 51.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Muhammad*, 326 Mich App at 63 (quotation marks and citation omitted).  The defendant bears a heavy burden to overcome the presumption that his counsel's actions were sound trial strategy. *Carbin*, 463 Mich at 600.

"Under MCR 6.121(C), the trial court 'must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.' "  *People v Furline*, 505 Mich 16, 20; 949 NW2d 666 (2020).  Pope argues that he was prejudiced by the joint trial because, due to the erroneous admission of Keilon's investigative subpoena testimony, both defendants felt compelled to testify to contradict those accusations, and the juries should not have been permitted to hear both defendants testify to their versions of events. Essentially, Pope argues that Davis and Pope each sought to place the blame on the other defendant for the events surrounding the shooting.  Severance may indeed be warranted when joint defendants present mutually exclusive or antagonistic defenses that create a serious risk of prejudice.  *Id*. at 21.  But requisite prejudice only occurs when "the competing defenses are so antagonistic at their cores that both cannot be believed."  *Id*. (quotation marks and citation omitted). Here, Davis's testimony and theory of the case was not antagonistic to Pope's defense.  They both testified to essentially the same version of events, in which Davis had arranged a marijuana purchase from Hill and Pope shot Hill after Hill attempted to rob them at gunpoint.  Although each defendant may have tried to minimize his own role in the events and to emphasize the culpability of the other, their versions were not factually inconsistent or otherwise impossible to both be believed.  Because defendants relied on the same defense, there was no basis to sever the trial, and defense counsel was not ineffective in failing to seek severance before trial.  *Id*.

Pope also argues that he was denied the effective assistance of counsel when his attorney failed to adequately prepare him to testify, thereby leaving Pope unprepared to respond to a

---

[4] *People v Pope*, unpublished order of the Court of Appeals, entered January 15, 2021 (Docket No. 352161).

question from the jury about why he would own an unregistered gun and be involved in a crime.[5] We disagree. Lawyers are not omniscient; the effective assistance of counsel does not require an attorney to foresee every question that might be asked of a witness, especially on matters tangential to the key issues in dispute. Moreover, Pope swore or affirmed, as all testifying witnesses do, to tell the truth in response to questions. We decline to conclude that Pope's defense attorney's failure to anticipate a specific question and instruct Pope exactly how to respond was unreasonable.

Even if we were to conclude otherwise, there is no evidence that Pope was prejudiced by defense counsel's performance. In response to the juror's question, Pope testified that he acquired a gun for protection because he lived in an unsafe area and the transaction with Hill "wasn't supposed to be a crime," as he was simply attempting to purchase marijuana. Pope's answer was a reasonable response to the juror's question, and Pope has not demonstrated a reasonable probability that a different result would have been reached but for defense counsel's failure to specifically instruct Pope how to respond to such a question.

## C. SENTENCE PROPORTIONALITY

Lastly, Pope argues that he is entitled to resentencing because the trial court failed to explain why the 33½ to 60-year sentence it imposed for armed robbery satisfied the principle of proportionality. We agree.

This Court reviews for an abuse of discretion the reasonableness of a particular sentence. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). "A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant." *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019). A sentencing court "necessarily abuses its discretion when it makes an error of law." *Wiley*, 324 Mich App at 165 (quotation marks and citation omitted).

Pope was 17 years old at the time of the underlying offenses. As is permitted by MCL 769.25, the prosecution opted not to seek a LWOP sentence for Pope's felony-murder conviction. During sentencing, the trial court discussed at length its opinion that Pope was "set up for failure" by poor examples of behavior in the people around him and having been raised in an environment that misconstrued the concept of manhood. Considering his circumstances, the court determined that a sentence of 33½ to 60 years' imprisonment was appropriate for the felony-murder conviction. It then added without further explanation that Pope's sentence for armed robbery would be the same.

The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted). Trial courts are free to impose sentences outside of the sentencing guidelines when the guidelines do not adequately address important factors. *Id.* at 352. "Trial courts must consult the sentencing guidelines when imposing a sentence, but the key test is whether the

---

[5] We note that Pope's attorney did object to the juror's question as assuming that Pope was involved in the commission of a crime, but the trial court overruled the objection.

sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Lydic*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349216); slip op at 8 (quotation marks and citation omitted).

With respect to his armed robbery conviction, Pope was assessed 25 points for prior record variables and 85 points for offense variables, resulting in a recommended minimum sentence of 135 to 225 months. MCL 777.62. The trial court's minimum sentence of 33½ years (or 402 months) for armed robbery was thus significantly out-of-guidelines. In selecting an appropriate sentence, "the trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citation omitted). Here, the trial court did not provide an explanation of any kind for the out-of-guidelines sentence. And the mere fact that the armed robbery sentence matched the sentence imposed for felony-murder is not a sufficient basis for the sentence because it fails to establish that the chosen sentence was proportionate to the *sentencing offense*, i.e., armed robbery, rather than felony murder. Because the trial court did not provide a sufficient basis for this Court to determine that the out-of-guidelines sentence was justified by the seriousness of the circumstances surrounding both the offense and the offender, we remand for the trial court to resentence Pope on the armed robbery conviction only, and to articulate a rationale should it choose to again impose an out-of-guidelines sentence. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).

## IV. CONCLUSION

In Docket No. 351578, we vacate Davis's convictions and sentences and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

In Docket No. 352161, we affirm Pope's convictions and sentences, except that we vacate his sentence for armed robbery and remand for resentencing on that offense only. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Elizabeth L. Gleicher
/s/ Anica Letica

-11-